**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/14/26

ANNA FRIEMOTH,

Plaintiff,

- against -

IBTIMES LLC; IBT MEDIA INC; AND DOES 1-10,

Defendants.

**25 Cv. 4111 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Anna Friemoth ("Friemoth") brought this case on May 15, 2025 alleging copyright infringement. After Defendants IBTimes LLC ("IBTimes") and IBT Media, Inc. ("IBT Media") (together, "Defendants"), failed to respond or otherwise appear in the case, Friemoth moved for default judgment against them. (See Dkt. No. 18.) This Court entered a default judgment on June 5, 2026 in favor of Friemoth and against Defendants. (See Dkt. No. 23.) Shortly thereafter, Defendants appeared in the case and moved to vacate the default judgment. (See Dkt. No. 30.) For the reasons that follow, Defendants' motion is **GRANTED.**

## I. BACKGROUND

Friemoth is a professional and fine arts photographer who does business in this District. (See Dkt. No. 1 ("Complaint") ¶¶ 4, 10.) Friemoth alleges that she owns the original photograph depicted in Exhibit A to the Complaint (the "Photograph") and has registered it with the United States Copyright Office. (Id. ¶¶ 11-12.)

Friemoth alleges that Defendants have used the Photograph for commercial purposes without her authorization, consent, or a license for its exploitation, including by posting the Photograph on a website titled "International Business Times," with the domain https://ibtimes.sg (the "Website"). (Id. ¶¶ 13-14; see also Dkt. No. 1-1 (depicting alleged infringing uses).) Friemoth alleges that the Website is owned and operated by IBT Media through its subsidiary IBTimes. (Complaint ¶¶ 6, 13.)

## II. PROCEDURAL HISTORY

Friemoth sued Defendants on May 15, 2025, alleging claims for copyright infringement and vicarious and/or contributory copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and violations of 17 U.S.C. § 1202. (Complaint ¶¶ 16-35.) The same day, Friemoth requested the issuance by this Court of summonses for

Defendants. (Dkt. No. 5.) Electronic summonses were issued on May 16, 2025. (Dkt. No. 7.) On June 9, 2025, Friemoth filed affidavits of service of the summons and Complaint on each of the Defendants through the Secretary of State of the State of New York. (Dkt. Nos. 8, 9.) On June 19, 2025, Friemoth filed affidavits of service of the summons and Complaint via Defendants' registered agent. (Dkt. Nos. 10, 11.)

After Defendants did not appear or otherwise respond to the filing of the Complaint, Friemoth requested the Clerk of Court enter Certificates of Default. (See Dkt. Nos. 12-15.) The Clerk of Court entered Certificates of Default as to each defendant on March 23, 2026. (Dkt. Nos. 17, 18.) On June 3, 2026, Friemoth filed a motion for default judgment against Defendants. (See Dkt. Nos. 18-22.) Defendants failed to respond to the motion.

On June 5, 2026, this Court granted Friemoth's motion and entered default judgment in favor of Friemoth and against Defendants for copyright infringement and violations of 17 U.S.C. § 1202. (Dkt. No. 23.) This Court held that Defendants were liable to Plaintiff for a total of $280,000.00 in statutory damages, $2,992.50 in attorney's fees, and $1,174.87 in costs. (Id.)

On June 29, 2026, counsel entered an appearance on behalf of Defendants, filed a Rule 7.1 Corporate Disclosure Statement, and filed a letter motion requesting permission to file a motion to vacate the default judgment under Federal Rule of Civil Procedure 60(b). (See Dkt. Nos. 24-26.) On June 30, 2026, this Court granted Defendants' request to file the motion. (See Dkt. No. 27.) On July 6, 2026, Defendants filed their motion to vacate the default judgment, (Dkt. No. 30); a memorandum of law in support of their motion, (Dkt. No. 33 ("Mot.")); and declarations in support of their motion from their Chief Executive Officer, Etienne Uzac ("Uzac"), (Dkt. No. 31 ("Uzac Dec.")), and their attorney, (Dkt. No. 32 ("Sash Dec.")). Friemoth filed an opposition on July 20, 2026. (Dkt. No. 34 ("Opp.").) Defendants filed their reply, (Dkt. No. 35 ("Reply")), and an additional declaration from Uzac, (Dkt. No. 36 ("Uzac Supp. Dec.")), on July 23, 2026.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that this Court may set aside a final default judgment under Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"). See Fed. R. Civ. P. 55(c). Rule 60(b), in turn, authorizes the Court to vacate a default judgment under several circumstances,

including "mistake, inadvertence, surprise, or excusable neglect," or "any other reason that justifies relief." Rule 60(b)(1), (6).

"A motion to vacate a default judgment is addressed to the sound discretion of the district court." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998) (citations omitted). In this Circuit, "[d]efault judgments 'are generally disfavored and are reserved for rare occasions.'" State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 168 (2d Cir. 2004) (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)). The Second Circuit has "expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default." Cody v. Mello, 59 F.3d 13, 15 (2d. Cir. 1995) (collecting cases); see also Brien v. Kullman Indus., Inc., 71 F.3d 1073, 1077 (2d Cir. 1995). Consistent with that preference, when this Court analyzes a motion to vacate a default judgment, "all doubts must be resolved in favor of the party seeking relief from the judgment," New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005).

## IV. DISCUSSION

This Court's analysis of whether vacatur is warranted under Rule 60(b) is governed by three considerations: "'(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'" State St. Bank & Tr. Co., 374 F.3d at 166-67 (quoting McNulty, 137 F.3d at 738).

"[N]o single factor is dispositive," FedEx TechConnect, Inc. v. OTI, Inc., 2013 WL 5405699, at *4 (S.D.N.Y. Sept. 23, 2013). Instead, the Court is required to balance these considerations to determine whether vacatur is warranted. See, e.g., Am. All. Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 62 (2d Cir. 1996) (holding that denial of vacatur was abuse of discretion even though willfulness "weigh[ed] somewhat against defaulting party" because the "balance" of considerations weighed in favor of vacatur); Peterson v. Syracuse Police Dep't, 467 F. App'x 31, 33 (2d Cir. 2012) (holding vacatur was warranted without considering willfulness "because on balance the district court properly concluded that the other two criteria [sic] were met"); Ghost in the Mach. Inc. v. Planned Parenthood Fed'n of Am., Inc., No. 22-CV-9270, 2026 WL 1383365, at *6 (S.D.N.Y. May 18, 2026)

(granting motion to vacate where defaulting party failed to establish the existence of a meritorious defense).

A. Willfulness

A default is willful if the defaulting parties' conduct was "more than merely negligent or careless." McNulty, 137 F.3d at 738-39. Willfulness is "egregious or deliberate conduct, such as where a defaulting defendant makes a strategic decision to default," Ghost in the Mach. Inc., 2026 WL 1383365, at *3 (internal quotation marks omitted); or where the defaulting parties "engaged in deliberately evasive conduct," Crawford v. Nails on 7th By Jenny Inc., No. 18-CV-9849, 2020 WL 564059, at *3 (S.D.N.Y. Feb. 5, 2020).

Where, as here, the defaulting parties did not respond to service, the Court considers whether service was proper, whether the defaulting parties had actual notice of the lawsuit, and the defaulting parties' conduct "after [they] became aware of the existence of the litigation or entry of default." Haran v. Orange Bus. Servs. Inc., No. 21-CV-10585, 2022 WL 2306945, at *2 (S.D.N.Y. June 27, 2022). See also Ghost in the Mach. Inc., 2026 WL 1383365, at *3; Baez v. RCO Restoration Corp., No. 20-CV-1066, 2023 WL 5333962, at *4 (S.D.N.Y. Aug. 18, 2023); Finkel v. Gaffney-Kroese Elec.

Supply Corp., No. 22-CV-1777, 2023 WL 2579165, at *4 (E.D.N.Y. Feb. 22, 2023); Carrasco v. Acropol Rest. Corp., No. 18-CV-7883, 2019 WL 2325556, at *2 (S.D.N.Y. May 31, 2019).

As an initial matter, the Court finds that Friemoth properly served each defendant with the summons and complaint. Service upon corporations like Defendants is proper in several circumstances, including where a plaintiff follows "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1); see also Fed. R. Civ. P. 4(h)(1)(a) (applying Rule 4(e)(1) to corporations). New York law provides that a corporation may be served process either by service on its registered agent or the Secretary of State. N.Y. Bus. Corp. Law § 306(a), (b)(1). Friemoth properly served each defendant with the summons and a copy of the complaint on both their registered agent and the New York Secretary of State. (See Dkt Nos. 7-11.)

While Friemoth having properly served Defendants weighs in favor of a finding of willfulness, see, e.g., Baez, 2023 WL 5333962, at *4, the remaining facts lead the Court to conclude that Defendants' default was not willful. First, the

record demonstrates Defendants "lacked actual notice of the suit," which militates against a finding of willfulness. Id. Defendants assert that they were not aware of the lawsuit until they were served "papers relating to Plaintiff's motion for a default judgment," (Uzac Dec. ¶ 36), because they had not updated their address with both their registered agent and the New York Secretary of State. (See id. ¶¶ 27-29; Uzac Supp. Dec. ¶ 4.) Defendants state that they have since updated their address with their registered agent and the New York Secretary of State. (See Uzac Supp. Dec. ¶ 4.) That uncontested evidence indicates Defendants "lacked actual notice of the suit," which weighs against a finding of willfulness. Baez, 2023 WL 5333962, at *4. See also, e.g., Drywall Tapers & Pointers of Greater N.Y. Local Union 1974, IUPAT, AFL-CIO v. Creative Installations, Inc., 343 F.R.D. 358, 364 (S.D.N.Y. 2022) (finding lack of actual notice where defendants submitted affidavits did not receive complaint despite proper service on Secretary of State); Baez, 2023 WL 533396, at *4 (lack of actual notice weighs against willfulness); Carrasco, 2020 WL 7232094, at *1 (finding failure to respond was not willful even where Defendants were

properly served because defendant asserted it did not receive a copy of the summons and complaint).

Friemoth counters by arguing that Defendants' failure to update their address with both the Secretary of State and their registered agent indicates willfulness. (See Opp. at 3-4.) But even if Defendants' failure to maintain a current address with both the New York Secretary of State and their registered agent at the time of service may have been negligent or careless, or perhaps even grossly negligent, willfulness requires more compelling evidence. See, e.g., Ghost in the Mach., 2026 WL 1383365, at *3-4; McNulty, 137 F.3d at 738-39. Indeed, "courts in this District have found that a defaulting party's conduct was not willful even if they were properly served through the Secretary of State so long as the party was otherwise reasonably diligent or lacked actual notice of the suit." Baez, 2023 WL 5333962, at *4. See, e.g., Ghost in the Mach. Inc., 2026 WL 1383365, at *3; Crawford, 2020 WL 564059, at *3; Carrasco, 2019 WL 2325556, at *2; Laffont v. Smarten Media LLC, No. 19-CV-9456, 2020 WL 7232094, at *1 (S.D.N.Y. Sept. 15, 2020).

Next, Defendants' conduct "after [they] became aware of the existence of the litigation or entry of default," Haran,

2022 WL 2306945, at *2, demonstrates they were "otherwise reasonably diligent," Baez, 2023 WL 5333962, at *4, which also weighs against a finding of willfulness. Defendants retained counsel less than a week after this Court entered the default judgment, (see Uzac Dec. ¶¶ 39-44); immediately contacted Friemoth's counsel, (see Sash Dec. ¶¶ 2-6); and submitted a letter to the Court requesting leave to file their motion to vacate the default judgment shortly thereafter. (See Dkt. No. 31.) Defendants' prompt action to vacate the default judgment after having received notice of it demonstrates their default was not willful. See, e.g., Ghost in the Mach. Inc., 2026 WL 1383365, at *4 (no willfulness where party promptly moved to vacate default judgment); Goo v. Hand Hosp., LLC, 23-CV-8235, 2025 WL 357745, at *2 (S.D.N.Y. Jan. 31, 2025) (similar).

Friemoth's arguments to the contrary are not persuasive. First, Friemoth contends that Defendants have failed to explain their default. (See Opp. at 3.) But Defendants have submitted sworn declarations from their CEO doing just that. (See Uzac Dec.; Uzac Supp. Dec.) The Court credits those declarations and finds that Defendants have adequately explained the reasons for their default.

Second, Friemoth argues that Defendants' failure to maintain a current address with both the New York Secretary of State and their registered agent constitutes willfulness. (See id. at 3-5.) But as discussed above, courts in this district have routinely found that the failure to update a corporation's address with the Secretary of State, as here, does not amount alone to willfulness. See, e.g., Baez, 2023 WL 5333962, at *4 (collecting cases).

Finally, Friemoth argues, without citation to authority, that Defendants' "failure to answer or otherwise appear for over one year after being served with the Complaint" controls, rather than Defendants' actions after becoming aware of the lawsuit. (Opp. at 5-6.) But, as explained above, the defaulting parties' conduct after becoming aware of the default is what demonstrates whether their default was willful, not their failure to participate in the lawsuit from the beginning. See, e.g., Haran, 2022 WL 2306945, at *2; Ghost in the Mach. Inc., 2026 WL 1383365, at *4; Goo, 2025 WL 357745, at *2.

In sum, there is no evidence Defendants engaged in "egregious or deliberate conduct, such as" having made "a strategic decision to default," Ghost in the Mach. Inc., 2026

WL 1383365, at *3 (internal quotation marks omitted); or that Defendants "engaged in deliberately evasive conduct," Crawford, 2020 WL 564059, at *3. The Court, therefore, holds that Defendants' default was not willful, which weighs in favor of vacatur of the default judgment.[1]

B. The Existence of a Meritorious Defense

The Court next considers whether Defendants have presented a meritorious defense. See State St. Bank & Tr. Co., 374 F.3d at 166-67. "Whether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" Id. at 167 (quoting Enron Oil Corp., 10 F.3d at 98). The Court is required, at this stage, to construe the evidence and argument presented by the defaulting parties in asserting a defense "generously" in their favor. Id. at 168. However, Defendants must still "articulate a defense with a degree of specificity

[1] Defendants argue for the first time in their Reply that vacatur is also warranted because the Court granted default judgment without "an examination into Plaintiff's alleged damages" and because Friemoth purportedly did not comply with the Court's Default Judgment Procedures. (See Reply at 3-6.) In holding that Defendants' conduct was not willful, the Court "does not consider" those "new arguments made for the first time in a reply brief." Metro. Transp. Auth. v. Duffy, --- F. Supp. 3d ---, 2026 WL 588117, at *44 (S.D.N.Y. Mar. 3, 2026).

which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." FedEx TechConnect, Inc., 2013 WL 5405699, at *8 (quoting Salomon v. 1498 Third Realty Corp., 148 F.R.D. 127, 130 (S.D.N.Y. 1993)). Further, Defendants must "present more than conclusory denials when attempting to show the existence of a meritorious defense." Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 173 (2d Cir. 2001).

Defendants argue principally that they are the "wrong parties" in this case because "IBTimes Co., Ltd., a Singaporean Company . . . allegedly published the infringing material at issue." (Mot. at 7-10.) In support of their argument, Defendants proffer the declaration of their CEO, who asserts that, among other things: the Photograph appeared on a website associated with a Singaporean domain, namely, the Website; that domain is controlled by an "separate" company, IBTimes Co., Ltd. (the "Singaporean Company"); Defendants do not own or operate the Website; neither defendant "directed nor authorized" the Singaporean Company or anyone else to publish the Photograph; and "Defendants do not exercise editorial control over the articles or

photographs appearing on" the Website. (Uzac Dec. ¶¶ 8-25.) Notably, Uzac does not disclaim any corporate relationship, such as ownership or financial interest, between Defendants and the Singaporean Company. Instead, Uzac focuses on Defendants' purported lack of ownership and control over the Website itself. Defendants have not proffered any other evidence in support of their asserted defense.

Friemoth counters that Defendants may still be held vicariously liable, even absent actual knowledge, "for copyright infringement where 'the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials,'" or if Defendants "'retain[] the ultimate right of supervision over the conduct of [the infringer]' and profit[] from the infringement." (Opp. at 7 (quoting Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963); Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)).)

Friemoth points to content on the Website as evidence that Defendants maintain the right of supervision over it

and, therefore, are subject to liability.[2] (See Opp. at 7.) The Website describes itself as a "business unit of IBT Media" with its "global headquarters . . . in New York City," listing Defendants' address. (See id.) Friemoth also argues that the Uzac Declarations amount, at most, to "self-serving denials." (Opp. at 6.)

Even construing Defendants' evidence and arguments in offering a defense "generously," as this Court must, see State St. Bank & Tr. Co., 374 F.3d at 168, this Court holds that Defendants have failed to demonstrate that "if proven at trial," Defendants' arguments "would constitute a complete defense." Id. at 167.

To start, Defendants have failed to "articulate" the legal basis for their "defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings," FedEx TechConnect, Inc., 2013 WL 5405699, at *8. Defendants merely state that they would assert the "affirmative defense that Plaintiff sued the

[2] Both sides have referenced the Subject Website and its contents in their pleadings, without including copies of its contents in the record. (See Mot. at 9-10; Opp. at 7.) The Court can, and does, "take judicial notice of articles and Web sites published on the Internet," here, the Subject Website. Bryant v. Thomas, 274 F. Supp. 3d 166, 189 n.9 (S.D.N.Y. 2017) (citation omitted).

wrong parties[.]" (Mot. at 8.) "It is not enough" for Defendants "merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work," Spectrum Ne., LLC v. City of Rochester, 2022 WL 787964, at *4 (W.D.N.Y. Mar. 15, 2022). Absent any stated legal basis, Defendants' articulation of their defense falls far short of the "degree of specificity" required to establish the existence of a meritorious defense. FedEx TechConnect, Inc., 2013 WL 5405699, at *8.

Furthermore, the Court holds that on this record, Defendants have failed to "present more than conclusory denials when attempting to show the existence of a meritorious defense." Pecarsky, 249 F.3d at 173. Uzac's Declarations cursorily deny any association between Defendants and the Website and are conspicuously silent as to whether Defendants maintain a corporate relationship with the Singaporean Company. These "conclusory denials" are insufficient "to show the existence of a meritorious defense." Id.

The Court holds that Defendants have failed to demonstrate the existence of a meritorious defense. See State St. Bank & Tr. Co., 374 F.3d at 166-67. However, Defendants' failure with respect to this consideration is not, standing

alone, fatal to their motion. See, e.g., Ghost in the Mach. Inc., 2026 WL 1383365, at *6 (granting motion to vacate where defaulting party failed to establish the existence of a meritorious defense). As explained below, the balance of the considerations this Court must analyze demonstrates that Defendants' motion should still be granted.

C. Prejudice to Friemoth

Finally, the Court must consider "whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." State St. Bank & Tr. Co., 374 F.3d at 167. "[D]elay alone is not a sufficient basis for establishing prejudice." Green, 420 F.3d at 110 (citation and quotation marks omitted). Instead, the nondefaulting party "may demonstrate prejudice by showing 'that delay will result in the loss of evidence, create increased difficulties of discovery, provide greater opportunity for fraud and [collusion],' or that [the nondefaulting party's] 'ability to pursue the claim has been hindered since the entry of the judgment.'" Crawford, 2020 WL 564059, at *4 (quoting Brown v. Gabbidon, No. 06-CV-8148, 2007 WL 1423788, at *3 (S.D.N.Y. May 14, 2007) (internal citation omitted)). The nondefaulting party may also establish prejudice by showing that the delay

will "thwart plaintiff's recovery or remedy." Green, 420 F.3d at 110 (citation and quotation marks omitted).

Friemoth, as the nondefaulting party, argues vacatur would prejudice her because this case involves "dynamic online content" and that the "infringing pages, server and content-management records, upload metadata, and revenue data are all subject to alteration or deletion," concerns she argues are "compound[ed]" by delay. (Opp. at 8.)

Defendants argue that Friemoth's concerns about the loss of evidence are merely speculative and attenuated because Friemoth has already included screenshots of the Photograph having been posted on the Website in the Complaint. (See Mot. at 11; Reply at 7.)

The Court holds that the mere possibility that online content may be "subject to alteration or deletion," (Opp. at 8), is insufficient to demonstrate prejudice. Friemoth has failed to substantiate her concerns with any evidence, rendering them merely speculative at this stage. Friemoth's speculation falls short of "showing that delay will result in the loss of evidence," which suggests she would not be prejudiced by vacatur. Crawford, 2020 WL 564059, at *4 (citation and quotation marks omitted). The Court agrees with

Defendants that Friemoth's concerns are further attenuated because she included records of the Photograph having been posted on the Website as an attachment to her complaint. (See Dkt. No. 1-1.)

There is no indication that Friemoth would be prejudiced by vacatur of the default, which weighs in favor of this Court granting Defendants' motion.

* * *

In sum, the Court holds that Defendants' default was not willful and that there is no indication that Friemoth would be prejudiced by vacating the default. Defendants have fallen short of demonstrating the existence of a meritorious defense. However, the balance of those considerations, see Peterson, 467 F. App'x at 33, combined with the Second Circuit's preference that cases in this jurisdiction "be resolved on the merits, not by default," Cody, 59 F.3d at 15, persuades the Court to **GRANT** Defendants' motion to vacate the default judgment and reopen the case.

D. Friemoth's Request for Conditions

The Court is left with one additional issue to resolve. In opposing Defendants' motion, Friemoth requests that should this Court vacate the default judgment, it do so with

conditions. (See Opp. at 9.) Defendants do not address Friemoth's request for conditions in their Reply.

To be sure, when "exercis[ing] its discretion to set aside a default, . . . a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party." Powerserve Intern., Inc. v. Lavi, 239 F.3d 508, 515 (2d Cir. 2001).

Nonetheless, the Court declines to impose conditions on its vacatur of the default judgment for two reasons. First, as discussed above, Friemoth has not demonstrated prejudice. Second, a district court that imposes a condition on the vacatur of a default judgment must "make findings sufficient to permit appellate review of the condition's reasonableness." Lavi, 239 F.3d at 516. Friemoth has not provided the Court with evidence or meaningful argument upon which it could make such findings. (See Opp. at 9.) The Court, therefore, declines to impose any of Friemoth's requested conditions.

The Court recognizes Friemoth's desires to expeditiously prosecute her case and ensure that the proper parties are in the case, including by pursuing jurisdictional discovery. The parties are free to file any such motions as appropriate to

address those and other issues if and when they arise. On this record, the Court concludes only that vacatur of the default judgment is warranted.

## V. ORDER

For the foregoing reasons it is hereby

**ORDERED** that the motion of Defendants IBTimes LLC and IBT Media Inc. ("Defendants") to Vacate the Default Judgment issued against them in this action (Dkt. No. 30) is **GRANTED;** and

**ORDERED** that Defendants shall answer the Complaint within twenty-one (21) days of the date of this Order.

The Clerk of Court is respectfully directed to withdraw the Certificates of Default (Dkt. Nos. 17 & 18) and reopen this case.

**SO ORDERED.**

Dated: 14 September 2026
New York, New York

Victor Marrero
U.S.D.J.